**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Nicholaus Samora

     v.                            Civil No. 07-cv-079-PB

Angela Poulin, et al.[1]

**O R D E R**

    Nicholaus Samora, a New Hampshire State prisoner proceeding
pro se and in forma pauperis, has filed a complaint pursuant to
42 U.S.C. § 1983, alleging that the defendants to this action,
employees of the New Hampshire Department of Corrections ("DOC"),
have retaliated against him for exercising his First Amendment
rights.  The matter is before me for preliminary review to
determine whether or not the complaint states a claim upon which
relief might be granted.  United States District Court for the
District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the
reasons stated herein, I find that the complaint does state a

---

    [1]Samora names the following defendants to this action:
Angela Poulin, Media Generalist for the Northern New Hampshire
Correctional Facility ("NCF"), NCF Hearings Officer Fortier
(first name unknown), NCF Major Dennis Cox, NCF Warden Larry
Blaisdell, and New Hampshire Department of Corrections Assistant
Commissioner Christopher Kench.

claim upon which relief might be granted and I direct that it be
served on the defendants.

Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
magistrate judge is directed to conduct a preliminary review and
to prepare a report and recommendation determining whether the
complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the
> action is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, or seeks
> monetary relief from a defendant who is immune
> from such relief under 28 U.S.C. § 1915A(b); or

> (ii) it fails to establish subject matter
> jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally.  See Ayala Serrano v.
Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following
Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  Ahmed

v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

## Background

On January 12, 2007, Samora prepared an affidavit for fellow DOC inmate Harvey Pratt, in support of Pratt's pending federal district court lawsuit.[2]  The affidavit included several documents attached to it as exhibits, and was to be used as evidence in Pratt's lawsuit.  Pratt asked defendant Poulin to copy the affidavit and attached documents.  Poulin, noting that the attachments to the affidavit were Samora's property, filed a disciplinary report on January 29, 2007, charging Samora with

---

[2]See Pratt v. Stephen J. Curry, Commissioner, N.H. Dep't of Corrs., Civ. No. 05-cv-367-SM (D.N.H.).

loaning property to Pratt in violation of DOC policy.  At a disciplinary hearing held before defendant Fortier on February 6, 2007, Samora defended himself on the grounds that the affidavit and attachments thereto had been provided to Pratt in support of Pratt's pending lawsuit, as truthful testimonial evidence to be used in that action.  Fortier found Samora guilty of a disciplinary violation for providing the materials in question to Pratt without first obtaining permission from an appropriate NCF official to do so.

Samora immediately appealed the guilty finding to defendant Cox.  Cox requested that Samora meet with him to discuss the appeal.  During that meeting, held on February 7, 2007, Samora presented defendant Cox with copies of two documents previously issued by this Court.  The first document was an Order issued in the case of Tom Cossette v. Angela Poulin, et al., Civ. No. 06-cv-347-JD, 2006 WL 3751206 (D.N.H. Dec. 18, 2006), finding that inmates have a First Amendment right to present truthful testimony in a lawsuit, and that taking adverse action against an inmate for exercising that right constitutes unconstitutional retaliation.  The second document was a Report and Recommendation issued in Pratt's case on June 8, 2006, finding that the DOC

policy prohibiting the copying of any document "that involves other inmates,"[3] such as an affidavit supplied in support of a lawsuit, without the approval of the warden, is an overbroad and invalid response to legitimate penological objectives.  According to Samora's complaint, Cox responded by calling the previous rulings of this Court "crap," and stating that he would not follow any order of this Court unless that order was directed at Cox personally.  Cox denied Samora's appeal.  Samora then appealed the guilty disciplinary finding to defendants Blaisdell and Kench, who, apparently relying on PPD 7.42, both denied Samora's appeal, on the grounds that Samora needed prior approval of the NCF Warden in order to provide an affidavit to another inmate.

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>[4]

Section 1983 creates a cause of action against those who, acting under color of State law, violate federal constitutional

---

[3]DOC Policy and Procedure Directive ("PPD") 7.42 generally prohibits the photocopying of documents "that involve other inmates."  <u>See</u> PPD 7.42, IV(B)(2).

[4]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Samora disagrees with this identification of the claims, he must do so by properly moving to amend his complaint.

or statutory law.  See 42 U.S.C. § 1983;[5] <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330–331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061–62 (1st Cir.), <u>cert. denied</u>, 522 U.S. 819 (1997).

II.  <u>Retaliation Claim</u>

Samora alleges that the disciplinary action taken against him constituted unconstitutional retaliation for the exercise of his First Amendment rights.  Conduct on the part of prison officials that is "not otherwise constitutionally deficient is actionable under § 1983 if done in retaliation for the exercise

_____

[5]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

of constitutionally protected first amendment freedoms."
Oropallo v. Parrish, No. 93-1953, at *3, 1994 WL 168519 (D.N.H.
May 5, 1994), aff'd, 23 F.3d 394 (1st Cir. 1994) (citing Ferranti
v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980)); see Goff v.
Burton, 7 F.3d 734, 738 (8th Cir. 1993), cert. denied, 512 U.S.
1209 (1994) (prison officials cannot lawfully impose a
disciplinary sanction against a prisoner in retaliation for the
prisoner's exercise of his constitutional right).  "[G]overnment
actions, which standing alone do not violate the Constitution,
may nonetheless be constitutional torts if motivated in
substantial part by a desire to punish an individual for exercise
of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530
(3rd Cir. 2003).

     Prison officials may make policy that is reasonably related
to legitimate penological interests, even at the expense of
certain constitutional rights.  See Beard v. Banks, ___ U.S. ___,
126 S.Ct. 2572, 2579 (2006) (citing Turner v. Safley, 482 U.S.
78, 89-90 (1987)).  However, "actions otherwise supportable lose
their legitimacy if designed to punish or deter an exercise of
constitutional freedoms."  Ferranti v. Moran, 618 F.2d 888, 892

n.4 (1st Cir. 1980) (citing <u>McDonald v. Hall</u>, 610 F.2d 16, 18 (1st Cir. 1979)).

In order to state a claim for retaliation for an exercise of his First Amendment rights, an inmate must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment, (2) some adverse action at the hands of the prison officials, and (3) a causal link between the exercise of the inmate's First Amendment rights and the adverse action. <u>Price v. Wall</u>, 428 F. Supp. 2d 52, 55 (D.R.I. 2006); <u>see also</u> <u>LaFauci v. N.H. Dep't of Corr.</u>, No. Civ. 99-597-PB, 2005 WL 419691, at *7 (D.N.H. Feb. 23, 2005) (Unpublished Order).  I consider each of these elements of a retaliation claim in turn.

    A.   <u>Conduct Protected by the First Amendment</u>

       1.   <u>Free Speech</u>

The First Amendment protects an individual's right to speak freely.  <u>See</u> U.S. Const. amend. I.[6]  Part of the free speech right of ordinary individuals is the right to testify truthfully.  <u>See</u> <u>Franco v. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988) (prisoner

---

[6]U.S. Const. amend. I states in relevant part:

> Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

stated valid § 1983 claim for retaliation by alleging that prison officials filed false charges against him in retaliation for exercising his right to testify); see also Melton v. City of Oklahoma City, 879 F.2d 706, 714 (10th Cir. 1989) (the right to appear and give true testimony as a witness in a legal proceeding is guaranteed by the First Amendment's free speech clause), cert. denied, 502 U.S. 906 (1991); Langley v. Adams County, 987 F.2d 1473, 1479 (10th Cir. 1993) (the right to testify truthfully is protected by the First Amendment); Reeves v. Claiborne County Bd. of Educ., 828 F.2d 1096, 1100 (5th Cir. 1987) (same) (quoting Smith v. Hightower, 693 F.2d 359, 268 (5th Cir. 1982)).  A written statement provided to another inmate in support of litigation against the prison has been held to be a form of free speech protected by the First Amendment.  See Zarska v. Higgins, 171 Fed. Appx. 255, 257, 259 (10th Cir. 2006).

     2.  Petitioning the Government for Redress of Grievances/Maintaining Right of Access to the Courts

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  In

the prison context, this right means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." <u>Sostre v. McGinnis</u>, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), <u>cert. denied</u>, <u>Sostre v. Oswald</u>, 404 U.S. 1049 & <u>Oswald v. Sostre</u>, 405 U.S. 978 (1972).  The First Amendment protects an individual's freedom of speech in both oral and written form.  <u>See</u>  U.S. Const. amend. I; <u>Palmigiano v. Travisono</u>, 317 F. Supp. 776, 786 (D.R.I. 1970) (recognizing that the First Amendment's protection extends to written correspondence to public officials seeking to redress grievances or protest injustices).

Under the Due Process Clause of the Fourteenth Amendment, prison inmates enjoy a right of access to the courts.  <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977)[7]; <u>Lewis v. Casey</u>, 518 U.S. 343,

_____

[7]The right of access to the Courts in the prisoner context has been limited to certain types of lawsuits.  <u>See</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 391 (6th Cir. 1999) (limiting a prisoner's right to access the courts to direct appeals, habeas petitions, and civil rights claims taken on prisoner's own behalf).  Here, however, I find that the lawsuit filed by Pratt sufficiently alleges unconstitutional conditions of confinement, that Pratt's right of access to the courts to litigate such a suit includes Samora's right to participate therein.  <u>See</u> <u>Johnson v. Avery</u>, 393 U.S. 483, 490 (1969) (plaintiff prisoner has standing to press claim under § 1983 for interference with plaintiff's right to assist another inmate in effecting the other inmate's right to

350–51 (1996).  States have an affirmative duty to ensure that inmates have meaningful access to the courts.  Id. at 832–34; Wolff v. McDonnell, 418 U.S. 539 (1974), Johnson v. Avery, 393 U.S. 483 (1969); Germany v. Vance, 868 F.2d 9, 14 (1st Cir. 1989) (internal quotations omitted).  A prisoner's right to access the courts has been held to encompass the right to testify as a non-party witness in a lawsuit.  Gay v. Shannon, No. Civ.A. 02–4693, 2005 WL 756731, *8 (E.D.Pa. Mar. 1, 2005) ("[The Third Circuit] has recognized the right [to testify as a non-party witness] exists for members of the general population and it should be extended to an inmate unless his confinement requires otherwise.") (citing Green v. Phila. Hous. Auth., 105 F.3d 881, 886 (3d Cir. 1997), Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), and Smith v. Hightower, 693 F.2d 359, 368 (5th Cir. 1982) for the proposition that the First Amendment protects a non-party witness' right to testify truthfully at trial).

Samora has alleged that he exercised his First Amendment free speech right and right to petition the government for a redress of grievances by making and providing another inmate with

petition for the redress of grievances); McDonald, 610 F.2d at 19 (same); Haymes v. Montanye, 547 F.2d 188, 191 (2d Cir. 1976) (same), cert. denied, 431 U.S. 967 (1977).

a written affidavit constituting his truthful testimony in support of the other inmate's pending federal civil rights lawsuit.  I find that Samora has sufficiently alleged that his written statement was both speech entitled to the protection of the First Amendment, and a petition to the government to redress grievances protected by the First Amendment.  Accordingly, I find that Samora has alleged a First Amendment right sufficient to meet the first requirement for stating a retaliation claim.

     B.   <u>Adverse Action</u>

To state an adverse action, plaintiff must allege that the defendants subjected him to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her Constitutional rights." <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001), <u>overruled in part on other grounds by</u> <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 187 n.6 (2d Cir. 2002); <u>see</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th cir. 1999).  Even if an inmate is not chilled in his expression, he may still state a claim for retaliation if it is arguable that the retaliatory behavior alleged is sufficient and of the type to deter an ordinary person from exercising his rights.  <u>Gay</u>, 2005 WL 756731, *8 (citing <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  Samora

alleges that the defendants initiated disciplinary proceedings
against him, found that he had committed a disciplinary
infraction, and imposed a sanction of ten hours of extra duty,
and ten days loss of canteen that was suspended for ninety days.
While the penalties imposed here were not extreme, there is no
doubt that, to an inmate of ordinary firmness, the bringing of
disciplinary charges, findings of guilty, and potential sanctions
are negative actions with important implications for both the
quality of an inmate's institutional life, and the potential for
an inmate to minimize the length of his prison stay by earning
parole.  Further, it is reasonable to conclude that inmates faced
with potential penalties for supplying testimony to support
another inmate's lawsuit would likely choose not to assist
another inmate in order to minimize negative consequences to
himself.  Samora, therefore, has stated sufficient facts to
allege that adverse actions were taken against him that would
chill an ordinary inmate in Samora's situation from exercising
his First Amendment right to provide an affidavit to another
inmate.

     Of course, prison administrators may make rules and
regulations that curtail the constitutional rights of inmates if

13

those rules are reasonably related to legitimate penological
interests. <u>Turner</u>, 482 U.S. at 89.  The same reasoning has been
applied to actions taken by prison officials that curtail
constitutional rights.  <u>See</u> <u>Beauchamp v. Murphy</u>, 37 F.3d 700, 711
(1st Cir. 1994), <u>cert. denied</u>, 514 U.S. 1019 (1995).  Here, the
regulation in question requires that all inmates who wish to make
a copy of any document that relates in any way to another inmate
seek prior approval from the NCF warden, who will determine
whether or not the inmate's request is "legitimate" prior to
granting or denying permission for the copy to be made.  I have
already found, and the State of New Hampshire has already
conceded, that this rule is overbroad and prevents inmates from
receiving copies of documents to which they are entitled.  <u>See</u>
<u>Pratt v. N.H. Dep't of Corrs.</u>, No. Civ. 05-cv-367-SM, 2006 WL
1644620, at *3 (D.N.H. June 8, 2006) (Unpublished Order).  My
Report and Recommendation on this matter was written a full seven
months prior to the events alleged in this case and was
specifically brought to the attention of the defendants named
here, and none of them chose to apply this Court's findings in
that matter to Samora's virtually identical situation.
Accordingly, Samora has easily stated sufficient facts to

demonstrate that an adverse action was taken against him in response to the exercise of his First Amendment rights, and that the action was not taken pursuant to a regulation that reasonably effects any legitimate penological objective.

C.   Retaliatory Action Caused by First Amendment Violation

Circumstantial evidence is often enough to support a claim that an adverse action was taken with retaliatory intent, as intentions are often difficult to prove through direct evidence. Beauchamp, 37 F.3d at 711; Ferranti, 618 F.2d at 892 (chronology of events provided support for inference of retaliation), McDonald, 610 F.2d at 18 (same); see also Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied, Palermo v. Woods, 516 U.S. 1084 (1996).  Here, Samora alleges that shortly after Poulin was asked to make a copy of an affidavit supporting an inmate lawsuit that had implications for Poulin's conduct, an action Poulin likely perceived as potentially contrary to her legal interests, that Poulin wrote a disciplinary report charging Samora with loaning the paperwork in question to another inmate. The lawsuit that Samora was assisting also named Cox and Blaisdell, defendants here, as defendants to that action.  Samora was charged with and found guilty of violating prison regulations

15

in due course.  Samora took every appeal available to him and was
denied relief, despite the fact that each defendant named was
well aware of the legal and factual evidence supporting Samora's
position.  This sequence of events presents sufficient evidence
of an adverse act specifically taken in response to Samora's
exercise of his First Amendment rights to meet the third
requirement for a retaliation claim.  Accordingly, I find that
Samora has stated a retaliation claim upon which relief may be
granted, and I direct that this action be served on the
defendants named in the complaint.

III. <u>Supervisory Liability Claims</u>

     "Supervisory liability under § 1983 cannot be predicated on
a respondeat [superior] theory, but only on the basis of the
supervisor's own acts or omissions."  <u>Aponte Matos v. Toledo
Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations
omitted).  A supervisor, to be liable for the acts of those who
serve underneath him, "either was a primary actor involved in, or
a prime mover behind, the underlying violation."  <u>Camilo-Robles
v. Zapata</u>, 175 F.3d 41, 43–44 (1st Cir. 1999).  There must be "an
affirmative link, whether through direct participation or through

conduct that amounts to condonation or tacit authorization" to the violation alleged.  <u>Id.</u> at 44.

Samora has named Cox, Blaisdell, and Kench as defendants to this action in their supervisory capacities.  Samora bases his allegation of supervisory liability on the fact that, through Samora's grievances and appeals, the supervisory defendants were aware of the violation of Samora's constitutional rights, and yet they failed to remedy the situation.  Instead, the supervisory defendants implicitly approved and supported the deprivation of Samora's First Amendment rights caused by Poulin and Fortier. Samora has, therefore, sufficiently alleged that Cox, Blaisdell, and Kench were responsible for the retaliation alleged, and I direct that the claims in this case be served against those defendants in their individual supervisory capacities.

<u>Conclusion</u>

As I find that plaintiff has stated a claim upon which relief may be granted, I order the complaint (document no. 1) be served on Defendants.  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General ("AG's office"), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1).  <u>See</u> LR

4.3(d)(2)(C).  Within thirty days from receipt of these
materials, the AG's office will submit to the court an Acceptance
of Service notice specifying those defendants who have authorized
the AG's office to receive service on their behalf.  When the
Acceptance of Service is filed, service will be deemed made on
the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office
to receive service on their behalf or whom the AG's office
declines to represent, the AG's office shall, within thirty days
from receipt of the aforementioned materials, provide a separate
list of the last known addresses of such defendants.  The Clerk's
office is instructed to complete service on these individuals by
sending to them, by certified mail, return receipt requested,
copies of these same documents.

Defendants are instructed to answer or otherwise plead
within twenty days of acceptance of service.  See Fed. R. Civ. P.
12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written
motions, notices, or similar papers shall be served directly on

the Defendants by delivering or mailing the materials to them or
their attorneys, pursuant to Fed. R. Civ. P. 5(b).

     **SO ORDERED.**

                       _____

                       James R. Muirhead
                       United States Magistrate Judge

Date:     May 8, 2007

cc:       Nicholaus Samora, pro se

19